**Slip Op. 13–17**

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LIFESTYLE ENTERPRISE, INC., TRADE MASTERS OF TEXAS, INC., EMERALD HOME FURNISHINGS, LLC, RON'S WAREHOUSE FURNITURE D/B/A VINEYARD FURNITURE INTERNATIONAL LLC,**<br><br>          Plaintiffs,<br><br>          and<br><br>**DREAM ROOMS FURNITURE (SHANGHAI) CO., LTD., GUANGDONG YIHUA TIMBER INDUSTRY CO., LTD.,**<br><br>          Consolidated Plaintiffs,<br><br>**ORIENT INTERNATIONAL HOLDING SHANGHAI FOREIGN TRADE CO., LTD.,**<br><br>          Intervenor Plaintiff,<br><br>          v.<br><br>**UNITED STATES, UNITED STATES DEPARTMENT OF COMMERCE,**<br><br>          Defendants,<br><br>          and<br><br>**AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE, VAUGHAN-BASSETT FURNITURE COMPANY, INC.,**<br><br>          Intervenor Defendants. | **Before: Jane A. Restani, Judge**<br><br>**Consol. Court No. 09-00378** |

# **OPINION**

[Commerce's Third Remand Results are sustained.]

Dated: February 5, 2013

Kristin H. Mowry, Jeffrey S. Grimson, Jill A. Cramer, Keith F. Huffman, Sarah M. Wyss, and Susan L. Brooks, Mowry & Grimson, PLLC, of Washington, DC, and John D. Greenwald, Cassidy Levy Kent (USA) LLP, of Washington, DC, for plaintiffs.[1]

William E. Perry, Garvey Schubert Barer, of Washington, DC, for consolidated plaintiff Dream Rooms Furniture (Shanghai) Co., Ltd.

John D. Greenwald, Cassidy Levy Kent (USA) LLP, of Washington, DC, and Patrick J. McLain, Wilmer, Cutler, Pickering, Hale & Dorr, LLP, of Washington, DC, for consolidated plaintiff Guangdong Yihua Timber Industry Co., Ltd.

Nancy A. Noonan, John M. Gurley, and Matthew L. Kanna, Arent Fox LLP, of Washington, DC, for intervenor plaintiff.

Stuart F. Delery, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendants. Of counsel on the brief was Shana Hofstetter, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendants.

J. Michael Taylor, Daniel L. Schneiderman, Joseph W. Dorn, and Prentiss L. Smith, King & Spalding, LLP, of Washington, DC, for intervenor defendants.

RESTANI, Judge:

This matter is before the court following three previous remands. See Lifestyle Enter., Inc. v. United States, 865 F. Supp. 2d 1284 (CIT 2012) ("Lifestyle III"); Lifestyle Enter., Inc. v. United States, 844 F. Supp. 2d 1283 (CIT 2012) ("Lifestyle II"); Lifestyle Enter., Inc. v.

---

[1] Mowrey & Grimson, PLLC withdrew as counsel for Ron's Warehouse Furniture on January 6, 2011. The court gave Ron's Warehouse Furniture thirty days to retain counsel. It has not done so as of the date of this opinion.

United States, 768 F. Supp. 2d 1286 (CIT 2011) ("Lifestyle I"). These cases involve challenges to the final results of the administrative review of an antidumping ("AD") order covering wooden bedroom furniture from the People's Republic of China ("PRC") by the U.S. Department of Commerce ("Commerce"). See Wooden Bedroom Furniture from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and New Shipper Reviews, 74 Fed. Reg. 41,374 (Dep't Commerce Aug. 17, 2009) ("Final Results"). The court ordered Commerce to reconsider a variety of issues in its first remand, resulting in Commerce issuing its Final Results of Redetermination Pursuant to Remand (Dep't Commerce Aug. 26, 2011) (Docket No. 132) ("First Remand Results"). Because Commerce again failed to support part of its redetermination with substantial evidence, the court remanded two issues back to Commerce. See Lifestyle II, 844 F. Supp. 2d at 1298.

Although Commerce complied with the court's directions in the second remand as to the valuation of wood inputs in its AD methodology, Commerce failed to provide substantial evidence to properly corroborate the adverse facts available ("AFA") rate assigned to Orient International Holding Shanghai Foreign Trade Co., Ltd. ("Orient"). See Lifestyle III, 865 F. Supp. 2d at 1291–92, 1294; Final Results of Redetermination Pursuant to Second Remand (Dep't Commerce June 11, 2012) (Docket No. 183) ("Second Remand Results"). As a result, the court again remanded this matter to Commerce so that the agency could comply with the court's previous instructions that it select a corroborated AFA rate, which reflects Orient's "commercial reality." Lifestyle III, 865 F. Supp. 2d at 1289–90. On remand, Commerce selected a new rate of 83.55% for Orient using a significant sample of verified sales data from a comparable producer. See Final Results of Redetermination Pursuant to Third Remand (Dep't Commerce Dec. 4, 2012)

Consol. Court No. 09-00378                                                                            Page 4

(Docket No. 208) ("Third Remand Results") at 7.  Because Commerce complied with the court's remand instructions and the objections of the intervenor defendants are without merit, the court sustains Commerce's redetermination.

## BACKGROUND

The court previously has set out the facts of this case in three previous opinions. See Lifestyle III, 865 F. Supp. 2d at 1287–88; Lifestyle II, 844 F. Supp. 2d at 1286–87; Lifestyle I, 768 F. Supp. 2d at 1293–95.  The court, however, summarizes below the facts relevant to this limited remand.

Lifestyle Enterprise, Inc. ("Lifestyle"), Orient, Guangdong Yihua Timber Industry Co., Ltd. ("Yihua Timber"), Dream Rooms Furniture (Shanghai) Co., Ltd., Ron's Warehouse Furniture d/b/a Vineyard Furniture, Emerald Home Furnishings, LLC, and Trade Masters of Texas, Inc. (collectively "plaintiffs") as well as intervenor defendants American Furniture Manufacturers Committee for Legal Trade and Vaughan-Bassett Furniture Company, Inc. (collectively "AFMC") challenged the Final Results.  All of these challenges were either dismissed or resolved in previous remands with the exception of the challenge to the weighted average dumping margin[2] assigned to Orient.  See generally id.  In its Final Results, Commerce

---

[2] A dumping margin is the difference between the normal value ("NV") of merchandise and the price for sale in the United States.  See 19 U.S.C. § 1673e(a)(1); 19 U.S.C. § 1677(35).  Unless the nonmarket economy methodology is used, NV is either the price of the merchandise when sold for consumption in the exporting country or the price of the merchandise when sold for consumption in a similar country.  19 U.S.C. § 1677b(a)(1).  An export price or constructed export price is the price that the merchandise is sold for in the United States.  19 U.S.C. § 1677a(a)–(b).  Under the nonmarket economy AD methodology applied here, Commerce calculates NV "on the basis of the value of the factors of production utilized in producing the merchandise and to which shall be added an amount for general expenses and profit plus the cost of containers, coverings, and other expenses."  19 U.S.C. § 1677b(c)(1).  Surrogate values from market economy countries are used as a measure of these costs.  19 U.S.C. § 1677b(c)(4).

Consol. Court No. 09-00378                                                                                                  Page 5

assigned an AFA rate to Orient of 216.01%, the same rate assigned to the PRC-wide entity. Final Results, 74 Fed. Reg. at 41,380. After the court determined that Commerce lacked substantial evidence to support the rate assigned to Orient and remanded the case, Commerce continued to apply the 216.01% rate to Orient, finding "that the information on the record corroborates the rate of 216.01 percent, as it relates to Orient . . . ." First Remand Results at 31. Commerce corroborated its determination based on sales data provided by Yihua Timber, which showed a small number of sales transactions at or above a 180% margin. Id. at 35–36. The court again found that Commerce failed to support with substantial evidence its selection of a 216.01% rate for Orient. Lifestyle II, 844 F. Supp. 2d at 1291.

During the second remand, Commerce calculated a new AFA rate for Orient of 130.81%, relying on a limited set of sales data from Yihua Timber, a cooperating party in the investigation. Second Remand Results at 17. On review, the court found that Commerce lacked substantial evidence to support the new rate in light of both the limited sales data used to corroborate the new rate and the discrepancy between Orient's rate and the rates assigned to other separate-rate entities throughout several segments of the proceedings. Lifestyle III, 865 F. Supp. 2d at 1290–92. Accordingly, the court remanded the matter to Commerce again for it to comply with the court's previous instruction "to start with the highest rate calculated for a comparable respondent or respondents and then add an additional amount to ensure compliance." Id. at 1291 (quoting Lifestyle II, 844 F. Supp. 2d at 1291 n.13) (highlighting the need for additional corroboration where the AFA rate is in multiples of 100%).

In its third redetermination, Commerce assigned Orient an AFA rate of 83.55%. Third Remand Results at 7. AFMC challenges the new rate as too low to provide the deterrent

effect intended by the AFA statute and continues to argue for the rate initially set by Commerce in its Final Results. See AFMC's Comments Concerning Commerce's Final Results of Redetermination Pursuant to Third Remand ("AFMC Comments") at 2. Plaintiffs do not object to the new rate. See Comments of Lifestyle Enterprise, Inc. et al. on Department of Commerce December 6, 2012 Final Results of Redetermination Pursuant to Third Remand. Defendants respond that Commerce has complied with the court's instructions in Lifestyle III and claim that AFMC's proposed rates have either been previously rejected by this court or are no better supported than the rate selected by Commerce. See Def.'s Resp. to AFMC's Remand Comments at 5–6.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court will uphold Commerce's redetermination in an AD review unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

AFMC claims that the new AFA rate selected by Commerce for Orient is "not sufficiently adverse and does not further the purpose of the statutory provision." AFMC Comments at 2. AFMC instead argues that Commerce should apply the original 216.01% AFA rate, which it contends is corroborated. Id. Even if the previous rate is not supported, AFMC argues that Commerce should have used the single highest non-aberrational transaction-specific margin.[3] Id. at 3. AFMC's argument lacks merit.

---

[3] Before the agency, AFMC alternatively argued that Commerce should have used the highest 10% by margin of Yihua Timber's sales to calculate Orient's dumping margin, rather
(continued...)

Where a respondent to an AD investigation fails to cooperate by not providing valid data for Commerce to consider in calculating an AD rate, Commerce may use facts otherwise available to fill the information gap. 19 U.S.C. § 1677e(a). Additionally, if Commerce determines that "an interested party has failed to cooperate by not acting to the best of its ability . . . ," Commerce is permitted to use inferences "adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b). When adverse inferences are applied, Commerce may look to information contained in the petition, a final determination in the investigation, any previous review, or any other information placed on the record. Id. In doing so, Commerce may select a rate high enough to deter companies from refusing to cooperate, but the rate may not be so high so as to be punitive. Gallant Ocean (Thai.) Co. v. United States, 602 F.3d 1319, 1323 (Fed. Cir. 2010). Accordingly, "Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin." Id. As with all of Commerce's determinations in an AD case, the final rate must be supported by substantial evidence. 19 U.S.C. § 1516a(b)(1)(B)(i). The Federal Circuit has identified what seems to be the outer limits of how little data Commerce must look to in corroborating a high AFA rate, but it has not created a floor below which Commerce may not select an AFA rate. See PAM, S.p.A. v. United States, 582 F.3d 1336, 1340 (Fed. Cir. 2009); Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1339 (Fed. Cir. 2002).

In the Third Remand Results, Commerce adopted a methodology in which it

---

[3](...continued)
than the highest 15% Commerce opted to use in the Third Remand Results. Third Remand Results at 9. AFMC did not raise this argument in its latest remand comments before the court, and so the court limits its consideration of AFMC's challenge to the general claim that the rate is not sufficiently adverse in light of the purpose of the AFA statute.

began with Yihua Timber's calculated AD margin, based on verified sales data, and then narrowed the selection of sales data to increase Orient's margin in a way which provided respondents with an incentive to cooperate without departing from "the mainstream of sales from this cooperating respondent." Third Remand Results at 6–7. Commerce opted to continue to rely on Yihua Timber's sales data because, like Orient, Yihua Timber was one of the two largest exporters of the subject merchandise, and the record contains sufficient sales and production data for Yihua Timber. Id. at 6. This allowed Commerce to undertake a detailed analysis of Orient's likely sales based on the sample invoice Orient provided earlier in the review. Id. Using the sample invoice, Commerce was able to match the products sold by Orient to those sold by Yihua Timber. Id. Commerce then ranked the product-matched Yihua Timber sales by the magnitude of the dumping margin. Id. at 7. Commerce decided to look at only the top 15% of these ranked Yihua Timber sales. Id. Commerce then took the simple average of these weighted-average dumping margins for each product type to arrive at an 83.55% margin for Orient. Id. This rate is more than double the margin assigned to Yihua Timber (40.74%), the most comparable cooperative respondent, but as indicated the margin is not challenged by Orient or those purchasing its products. Id. at 6–7.

    AFMC's challenge lacks legal support based on either applicable statutes or case law. Although the statute permits Commerce to use adverse inferences in calculating an AFA rate for a non-cooperating respondent, it is silent as to how adverse these inferences must be. See 19 U.S.C. § 1677e(b). Additionally, as noted above, both this court and the Federal Circuit have repeatedly required Commerce to select rates which are not overly punitive or devoid of some grounding in the respondent's commercial reality. See, e.g., Lifestyle III, 865 F. Supp. 2d at

Consol. Court No. 09-00378                                                                                           Page 9

1289–90.  Although AFMC points to cases where, based on the particular facts of those cases, the Federal Circuit has permitted minimal corroboration to support high AFA rates, it has not identified any case law requiring Commerce to impose a higher AFA rate because the rate was not sufficiently adverse.  AFMC Comments at 3.  So long as Commerce has selected an AFA rate properly corroborated by substantial evidence, it alone has discretion in deciding the magnitude of the "built-in increase intended as a deterrent to non-compliance."  See Gallant, 602 F.3d at 1323.  As indicated, in this case, Commerce imposed a rate that is more than twice that of the other comparable respondent, Yihua Timber.  Third Remand Results at 6–7.  AFMC offered no basis on which the court could reject this margin as insufficiently adverse.

## CONCLUSION

Orient's AFA rate is supported by substantial evidence, and therefore Commerce's Third Remand Results are SUSTAINED.  Judgment will be entered accordingly.

                                              /s/ Jane A. Restani
                                                   Jane A. Restani
                                                           Judge

Dated: February 5, 2013
       New York, New York

**Slip Op. 13–17**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LIFESTYLE ENTERPRISE, INC., TRADE MASTERS OF TEXAS, INC., EMERALD HOME FURNISHINGS, LLC, RON'S WAREHOUSE FURNITURE D/B/A VINEYARD FURNITURE INTERNATIONAL LLC,** | |
| Plaintiffs, | |
| and | |
| **DREAM ROOMS FURNITURE (SHANGHAI) CO., LTD., GUANGDONG YIHUA TIMBER INDUSTRY CO., LTD.,** | |
| Consolidated Plaintiffs, | |
| **ORIENT INTERNATIONAL HOLDING SHANGHAI FOREIGN TRADE CO., LTD.,** | |
| Intervenor Plaintiff, | |
| v. | **Before: Jane A. Restani, Judge** |
| **UNITED STATES, UNITED STATES DEPARTMENT OF COMMERCE,** | **Consol. Court No. 09-00378** |
| Defendants, | |
| and | |
| **AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE, VAUGHAN-BASSETT FURNITURE COMPANY, INC.,** | |
| Intervenor Defendants. | |

## **JUDGMENT**

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decisions herein; Now therefore, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that the determination by the United States Department of Commerce upon the redetermination is SUSTAINED.

                                                                            /s/ Jane A. Restani
                                                                               Jane A. Restani
                                                                                      Judge

Dated: February 5, 2013
       New York, New York